**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:19-cr-00103-TWP-DLP |
| | ) | |
| KERRI AGEE a/k/a KERRI AGEE-SMITH, | ) | -01 |
| KELLY ISLEY, | ) | -02 |
| NICOLE SMITH a/k/a NICOLE SMITH-KELSO, | ) | -03 |
| CHAD GRIFFIN, and | ) | -04 |
| MATTHEW SMITH | ) | -05 |
| | ) | |
| Defendants. | ) | |

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS INDICTMENT

Four of the five defendants in this alleged conspiracy to defraud the United States by obtaining Small Business Association ("SBA") guarantees for loans that did not meet SBA's guidelines and requirements, have filed motions to dismiss specific counts of the Indictment. Before the Court are Motions to Dismiss the Indictment filed pursuant to Federal Rule of Criminal Procedure 12(b)(3) by Defendants Kerri Agee (Filing No. 78), Kelly Isley (Filing No. 81), Nicole Smith (Filing No. 87), and Chad Griffin (Filing No. 92) (collectively, "Defendants"). The Defendants were indicted on March 20, 2019 with one count of Conspiracy to Commit Wire Fraud Affecting a Financial Institution, in violation of 18 U.S.C. § 1349, and one count of Conspiracy to Make False Statements in Purchases and Applications for Guarantees, in violation of 18 U.S.C. § 371, as well as Wire Fraud and Making or Aiding and Abetting False Statements in Purchases and Applications for Guarantees, in violation of 18 U.S.C. § 371. The Defendants move to dismiss the Indictment on grounds of multiplicity, lack of specificity, and counts being time barred. For the following reasons, the Court **grants in part and denies in part** the Motions to Dismiss.

# I.  <u>LEGAL STANDARD</u>

Federal Rule of Criminal Procedure 7(c)(1) requires that an indictment include "a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1).  A defendant may move to dismiss an indictment if there is "a defect in the indictment," such as "charging the same offense in more than one count (multiplicity)" or "lack of specificity." Fed. R. Crim. P. 12(b)(3).  "An indictment need not say much to be deemed sufficient." *United States v. Moore*, 563 F.3d 583, 585 (7th Cir. 2009).  "[W]hen evaluating the sufficiency of an indictment, we focus on its allegations, which we accept as true." *Id.* at 586. "Challenging an indictment is not a means of testing the strength or weakness of the government's case, or the sufficiency of the government's evidence." *Id.* (citation and quotation marks omitted).

"Indictments are reviewed on a practical basis and in their entirety, rather than in a hypertechnical manner." *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000) (citation and quotation marks omitted). "[A]n indictment is legally sufficient if it (1) states all the elements of the crime charged, (2) adequately informs the defendant of the nature of the charges against him, and (3) allows the defendant to assert the judgment as a bar to future prosecutions of the same offense." *United States v. Vaughn*, 722 F.3d 918, 925 (7th Cir. 2013) (citation omitted).  In order to successfully challenge an indictment, a defendant must demonstrate that the indictment does not meet one or more of these requirements and that she will suffer prejudice as a result.  *United States v. Dooley*, 578 F.3d 582, 590 (7th Cir. 2009).

"In setting forth the offense, it is generally acceptable for the indictment to 'track' the words of the statute itself, so long as those words expressly set forth all the elements necessary to constitute the offense intended to be punished." *Smith*, 230 F.3d at 305.  "[W]hile there must be enough factual particulars so the defendant is aware of the specific conduct at issue, the presence

or absence of any particular fact is not dispositive." *United States v. White*, 610 F.3d 956, 959 (7th Cir. 2010).

## II. <u>DISCUSSION</u>

The Defendants ask the Court to dismiss the Indictment because of multiplicity, a lack of specificity, and some counts being time barred. The Indictment charges as follows:

**Count 1** charges Defendants Kerri Agee, Kelly Isley, Nicole Smith, Chad Griffin, and Matthew Smith with Conspiracy to Commit Wire Fraud Affecting a Financial Institution;

**Count 2** charges Defendants Kerri Agee, Kelly Isley, and Nicole Smith with Wire Fraud Affecting a Financial Institution;

**Count 3** charges Defendant Kerri Agee with Wire Fraud Affecting a Financial Institution;

**Count 4** charges Defendants Kerri Agee, Kelly Isley, and Nicole Smith with Wire Fraud Affecting a Financial Institution;

**Count 5** charges Defendants Kerri Agee, Kelly Isley, and Nicole Smith with Wire Fraud Affecting a Financial Institution;

**Count 6** charges Defendants Kerri Agee, Kelly Isley, Nicole Smith, Chad Griffin, and Matthew Smith with Conspiracy to Make False Statements in Purchases and Applications for Guarantees;

**Count 7** charges Defendants Kerri Agee, Kelly Isley, and Nicole Smith with False Statements in Purchases and Applications for Guarantees;

**Count 8** charges Defendants Kerri Agee, Kelly Isley, and Nicole Smith with False Statements in Purchases and Applications for Guarantees;

**Count 9** charges Defendant Kerri Agee with False Statements in Purchases and Application;

**Count 10** charges Defendant Kerri Agee with False Statements in Purchases and Applications;

**Count 11** charges Defendants Kerri Agee, Kelly Isley, and Nicole Smith with False Statements in Purchases and Applications for Guarantees;

**Count 12** charges Defendants Kerri Agee and Chad Griffin with False Statements in Purchases and Applications for Guarantee; and

**Count 13** charges Defendants Kerri Agee, Kelly Isley, and Nicole Smith with False Statements in Purchases and Applications for Guarantees.

While each of the Defendants filed separate Motions to Dismiss, each advance essentially the same arguments for dismissal. Therefore, the Court will address the Motions together while discussing the counts in the Indictment.

A.  **Multiplicity of Counts 1 and 6, Counts 7 and 8, and Counts 9 and 10**

The Defendants argue that Count 1 (Conspiracy to Commit Wire Fraud Affecting a Financial Institution in violation of 18 U.S.C. § 1349), and Count 6 (Conspiracy to Make False Statements in Purchases and Applications for Guarantees in violation of 18 U.S.C. § 371), should be dismissed because they are duplicative of each other. "A multiplicitous indictment charges a single offense as separate counts . . . in violation of the Double Jeopardy Clause of the Fifth Amendment." *United States v. Ajayi*, 808 F.3d 1113, 1123 (7th Cir. 2015) (internal quotation omitted). "In the realm of criminal conspiracies, it is settled that the prosecution of a single conspiracy as two separate conspiracies violates a defendant's double jeopardy guarantee." *United States v. Castro*, 629 F.2d 456, 461 (7th Cir. 1980). "To determine whether a conspiracy has been subdivided arbitrarily, . . . courts therefore will . . . consider such factors as whether the conspiracies involve the same time period, alleged co-conspirators and places, overt acts, and whether the two conspiracies depend on each other for success." *Id.*

The Defendants rely on *Castro* in arguing that Counts 1 and 6 are multiplicitous because both conspiracies involved the same co-conspirators, took place during the same time period, and took place in Hamilton County, Indiana. They contend that both conspiracies have the same

purpose, manner, and means, and Counts 1 and 6 depend on each other for success because they are premised on the same facts.

In response, the Government asserts that Counts 1 and 6 are not multiplicitous because each count is a separate offense with a separate object. "A multiplicitous indictment charges a single offense as separate counts." *Ajayi*, 808 F.3d at 1123. The Government acknowledges that it cannot prosecute "a single conspiracy as two separate conspiracies." *Castro*, 629 F.2d at 461. However, in order for the prohibition to apply, the conspiracies must be "for the same offense in law and in fact." *Id.* "If one element is required to prove the offense in one count which is not required to prove the offense in the second count, there is no multiplicity." *United States v. Marquardt*, 786 F.2d 771, 778 (7th Cir. 1986) (internal citation and quotation marks omitted).

The Government persuasively points out that in this case the two conspiracies not only charge separate objects (§ 1014 and § 1343), but they arise under different conspiracy statutes (§ 371 and § 1349). The elements the Government will be required to prove at trial are distinct, and thus, the offenses are distinct. "To prove wire fraud the government must show defendant's participation in a scheme to defraud, his intent to defraud, and his use of the wires in furtherance of the fraudulent scheme." *United States v. Corrigan*, 912 F.3d 422, 428 (7th Cir. 2019) (internal citation and quotation marks omitted). In contrast, "to establish a violation under § 1014, the government must establish . . . that the defendant (1) knowingly (2) made a false statement (3) to a[n] . . . enumerated entity (4) for the purpose of influencing its actions." *United States v. Abu-Shawish*, 175 F. App'x 41, 44 (7th Cir. 2006).

The Government further argues that the Indictment's two separate conspiracy counts also differ in that Count 6 (§ 371) requires proof of an overt act while Count 1 (§ 1349) does not. *Compare United States v. Griggs*, 569 F.3d 341, 344 (7th Cir. 2009) (proof of overt act required

for § 371), *with United States v. Roy*, 783 F.3d 418, 420 (2d Cir. 2015) (no proof of overt act required for § 1349). In addition, the Government asserts that the *Castro* factors discussed by the Defendants concerning a subdivided single conspiracy are inapplicable here, because the two conspiracy counts are under different statutes and have different objects.

In deciding whether two offenses are the same or not, the *Blockburger* case framed the courts inquiry as follows:

> The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact that the other does not.

*Blockburger v. United States*, 284 U.S. 299, 304 (1932).

The Court first notes that in arguing their position concerning multiplicity, the Defendants heavy reliance on the Seventh Circuit's *Castro* decision is misplaced. After the 1980 *Castro* decision was issued, the Seventh Circuit has since explained that *United States v. Dixon*, 509 U.S. 688, (1993), "re-established the 'same elements' test articulated by *Blockburger* as the one and only test that courts are to apply in considering whether a defendant may be prosecuted or punished twice based on a single act or transaction." *United States v. Hatchett*, 245 F.3d 625, 631 (7th Cir. 2001). "*Dixon* informs us that in deciding whether two offenses are the same or not, our inquiry must focus on the elements of each of the charged offenses rather than the underlying conduct." *Id.* Thus, the rule in *Blockburger* remains the applicable rule.

As noted above, Count 1 of the Indictment charges each of the Defendants with Conspiracy to Commit Wire Fraud Affecting a Financial Institution in violation of 18 U.S.C. § 1349 while Count 6 charges them with Conspiracy to Make False Statements in Purchases and Applications for Guarantees in violation of 18 U.S.C. § 371. These two conspiracies arise under different conspiracy statutes and charge separate objects—§ 1014 and § 1343. At trial, the Government will

have to prove distinct elements for these two conspiracies. Additionally, the Government will have to prove an overt act for Count 6 but not for Count 1. In light of *Blockburger*, *Dixon*, and *Hatchett* and the charges in the Indictment, the Court concludes that Counts 1 and 6 are not multiplicitous, and thus, the Defendants' request for dismissal based on multiplicity is **denied**.

Regarding Counts 7 and 8, Defendants argue these two counts are duplicative; both are based on the alleged false statement pertaining to a loan to Borrower #6 that proceeds would not be used to pay delinquent taxes when in fact they were going to be used for that purpose. Likewise, Counts 9 and 10 are duplicative because both are based on the alleged false statement pertaining to a loan to Borrower #1 that the borrower had provided a $50,000.00 equity injection as a condition precedent to qualifying for the loan from the Small Business Administration ("SBA").

The Defendants assert,

> Separate charges for the same false statement made on different occasions may be brought only if the repetition of the statement constitutes an additional impairment of the operations of the government. *See, e.g., U.S. v. Newton*, No. S1 01 CR 635 CSH, 2002 WL 1285361, at *6-7 (S.D.N.Y. June 10, 2002) (collecting cases). There is only one impairment to the government with respect to the alleged statements, namely, that the SBA paid its guaranteed portion to the Financial Institutions after the loans defaulted. Therefore, Counts 7 and 8 and Counts 9 and 10 should also be dismissed.

(Filing No. 79 at 10.)

Concerning Counts 7 and 8 and Counts 9 and 10, the Government responds that separate documents contained in the same loan application can constitute separate offenses under § 1014. *See Abu-Shawish*, 175 F. App'x at 44 (rejecting as "frivolous" argument that two false letters submitted as part of same loan application were for the same § 1014 offense); *United States v. Nash*, 115 F.3d 1431, 1439 (9th Cir. 1997) (holding that "the 1985 and 1986 false tax returns were separate documents that could independently support separate counts under section 1014" when submitted as part of the same loan application); *United States v. Davis*, 730 F.2d 669, 671–72 (11th

Cir. 1984) (separate documents submitted as part of same loan application could constitute "separate and distinct acts for the purposes of 18 U.S.C. § 1014 because different proof is required to establish the falsity of each document").

The Government argues Counts 7 and 8 pertain to a loan to Borrower #6, but Count 7 identifies the false statement as being how much of the funds were going to working capital while Count 8 identifies the false statement on the eligibility questionnaire as being whether the proceeds would be used to pay delinquent taxes. The false statements are in separate documents that make distinct factual representations, so they can be charged as separate counts. Counts 9 and 10 pertain to a loan to Borrower #1. Count 9 identifies the false statement as the settlement sheet that designated $65,004.20 as going to working capital while Count 10 identifies the false statement as a certification that the lender had complied with SBA program requirements. The Government argues that, read in its entirety, the Indictment identifies these false statements as being located in separate documents, so they support separate counts.

Moreover, the Government asserts that merger, not dismissal, is the appropriate remedy if the Court were to conclude that the counts are multiplicitous, especially when it allows the Government to proceed on alternate theories of liability. *See United States v. Bradbury*, 2015 U.S. Dist. LEXIS 76849, at *18–19 (N.D. Ind. June 15, 2015) ("consolidation, rather than dismissal is the right remedy" where purpose of multiplicitous count "was to provide an alternative theory of liability by which the jury could convict"). Defendant "Agee concedes that merging Count 1 with Count 6, Count 7 with Count 8, and Count 9 with Count 10 would cure the Indictment's multiplicity." (Filing No. 86 at 4.)

A careful review of Counts 7 and 8 and Counts 9 and 10, reveals that the counts are multiplicitous. Counts 7 and 8 both charge false statements under 18 U.S.C. § 1014 by Agee, Isley,

and Smith on April 21, 2009 ([Filing No. 1 at 31](#)).  The Indictment describes that, on "April 21, 2009, NICOLE SMITH uploaded the loan application, along with the lender write-up and eligibility questionnaire, to a file share site for later download by the SBA." *Id.* at 20–21.  Count 7 describes the false statement in the loan application as representing that $35,000.00 of the loan proceeds would be used for working capital even though the Defendants knew it would be used to pay delinquent taxes.  Count 8 describes the false statement in the eligibility questionnaire (part of the loan application) as representing that the loan proceeds would not be used to pay delinquent taxes.  This resulted in the SBA paying loan proceeds that otherwise would not have been paid. Counts 7 and 8 depend entirely upon the same law and facts.  The same representation—that loan proceeds would not be used to pay delinquent taxes—made in the same loan application cannot support two separate counts.

Counts 9 and 10 charge false statements under 18 U.S.C. § 1014 by Agee on September 3, 2009.  *Id.* at 31.  The Indictment describes that, on "September 3, 2009, after Borrower #1 had defaulted on its SBA-guaranteed loan, a Banc-Serv employee electronically transmitted to the SBA the loan authorization and the false settlement statement that had been prepared by KERRI AGEE and KELLY ISLEY . . . ." *Id.* at 9.  "The purchase request also contained a false certification by an employee at Lending Institution #4 that Lending Institution #4 'has materially complied with the SBA Loan Program Requirements . . . applicable to this loan.'" *Id.*  Count 9 describes the false statement as making it appear on the settlement statement that Borrower #1 had made a $50,000.00 equity injection when they had not.  Count 10 describes the false statement as certifying on the same application that the lender complied with program requirements to have the borrower provide a $50,000.00 equity injection when they had in fact not done so.  *Id.* at 31.  Counts 9 and 10 depend

entirely upon the same law and the same facts and the same misrepresentation regarding the $50,000.00 equity injection. This cannot support two separate counts.

The Court acknowledges the case law cited by the Government (*Abu-Shawish*, *Nash*, and *Davis*) for the proposition that separate documents in a single loan application *could* support separate charges. However, the Court views this case differently because the misrepresentations were the same in the loan applications. The Court concludes that Counts 7 and 8 and Counts 9 and 10 are multiplicitous and that the appropriate remedy is merger, not dismissal of the counts. Therefore, the Defendants' request to dismiss Counts 7–10 is **denied**; however, Counts 7 and 8 are **merged** and Counts 9 and 10 are **merged**.

**B.    Lack of Specificity in Counts 1 through 5**

Next, the Defendants assert that, in order to take advantage of the ten-year statute of limitations for Counts 1 through 5, the Government was required to plead facts demonstrating that there was an increased risk of loss to a financial institution. *See United States v. Serpico*, 320 F.3d 691, 694 (7th Cir. 2003). They argue that Counts 1 through 5 do not specify how the alleged wire fraud affected a financial institution, and without doing so, the counts are subject to a five-year statute of limitations rather than a ten-year statute of limitations. They argue that, because the counts fall outside the five-year window, these five counts must be dismissed.

The Defendants argue the SBA is not a financial institution, and while the Indictment alleges that Financial Institutions 2 through 4 were affected, it does not explain how they were affected or how they were put at an increased risk of loss. The purpose of the SBA guarantee was to reduce the risk to financial institutions in the event the loans went into default. The Indictment alleges, "[w]hen the loans defaulted, the Defendants and co-conspirators would submit the same misrepresentations . . . as part of purchase requests to the SBA to ensure that the banks originating

the SBA-guaranteed loans . . . would be compensated." (Filing No. 1 at 7.) The Defendants argue that, because the Indictment fails to allege how they put any financial institutions at an increased risk of financial loss, Counts 1 through 5 should be dismissed.

The Government responds that an indictment is sufficient as long as it alleges the statutory elements and provides sufficient information to apprise the defendant of the charges against him. *Smith*, 230 F.3d at 305 ("it is generally acceptable for the indictment to 'track' the words of the statute itself"); *White*, 610 F.3d at 959 ("while there must be enough factual particulars so the defendant is aware of the specific conduct at issue, the presence or absence of any particular fact is not dispositive"). Counts 1–5 track the charging language and specifically allege the fraudulent scheme affected financial institutions. Counts 2 through 5, the wire fraud counts, specifically identify which financial institutions were affected by the offense conduct underlying each count.

The Government further argues that the Indictment describes how the financial institutions were affected. The SBA provided guarantees to financial institutions that made loans to small businesses (Filing No. 1 at 2). Banc-Serv acted as the financial institutions' agent in obtaining loan guarantees from the SBA. *Id.* at 5. "If SBA rules were not followed, the SBA could deny the guarantee, resulting in losses to the lending institution." *Id.* at 4. The Defendants "conceal[ed] the ineligible loans from the SBA so Banc-Serv would not have to indemnify the lending institutions" for the losses they suffered. *Id.* at 8. The Government asserts that the Indictment adequately explains how financial institutions could have been exposed to risk for the Defendants' fraud. *See Serpico*, 320 F.3d at 694 (for a financial institution to have been "affected," fraudulent scheme must have exposed it to a new or increased risk of loss).

The Government's arguments are well-taken. As the Seventh Circuit explained, a "financial institution need not have actually suffered a loss in order to have been affected by the

scheme," and "the mere fact that participation in a scheme is in a bank's best interest does not necessarily mean that it is not exposed to additional risks and is not 'affected.'" *Id.* at 694–95. The Indictment provides sufficient factual information about particular financial institutions being affected by the fraud so as to allow the counts to proceed under the ten-year statute of limitations.

### C. Time Bar as to Counts 3 through 5 and Counts 9, 10, and 12

The Defendants argue that Counts 3 through 5 are time-barred even under a ten-year statute of limitations. Count 3 is based on a loan to Borrower #1, and "after Borrower #1 had defaulted on its SBA-guaranteed loan, a Banc-Serv employee electronically transmitted to the SBA . . . the false . . . statement that had been prepared by KERRI AGEE and KELLY ISLEY" in November and December 2004 (Filing No. 1 at 9). The Defendants explain that the charge is based on the request to the SBA after the loan defaulted rather than on when the false statement was actually made. They argue that the general rule in the Seventh Circuit is that the fraud is complete when the defendant creates a risk of financial loss, not when the loss occurs. *See United States v. Anderson*, 188 F.3d 886, 891 (7th Cir. 1999). "[T]he alleged risk was created upon application for the SBA loans. The loan application for the Loan to Borrower #1 was completed in November and December 2004. Indictment ¶¶ 30-33. Because this was outside the ten year statutes of limitations applicable to Count 3, the Court should dismiss that Count." (Filing No. 79 at 13.)

The Defendants similarly argue that Counts 4 and 5 are based on a loan to Borrower #6, and the charges are based on the request to the SBA after the loan defaulted rather than on when the false statements were actually made. Thus, these counts should be dismissed because they fall outside the ten-year statute of limitations.

In response, the Government asserts that the Defendants' reliance on *Anderson* is unavailing because that case involved bank fraud, not wire fraud, and in this case involving wire

fraud, the Government must prove the Defendants were involved in a scheme to defraud with an intent to defraud, and they used the wires in furtherance of the scheme. The Government argues, for mail or wire fraud, the statute of limitations "does not begin running with the completion of the fraud scheme; rather, it runs from the date of the charged call or mailing in furtherance of the scheme." *United States v. Eckhardt*, 843 F.2d 989, 993 (7th Cir. 1988). "Each mailing [or wire] constitutes a separate offense." *United States v. Tadros*, 310 F.3d 999, 1006 (7th Cir. 2002).

The Indictment alleges that the purpose of the Defendants' scheme was to deceive the SBA into guaranteeing ineligible loans and then paying out on the guarantees in the event the loans defaulted. The Government asserts that the scheme necessarily involved deception at the front end and at the back end and took place over many years. The Defendants repeated the original misrepresentations when requesting that the SBA pay the guarantees after the loans defaulted. The fraudulent scheme was not completed until the SBA had paid out on a guarantee; thus, the Indictment sufficiently alleges that the wires in Counts 3 through 5, which transmitted the guarantee purchase requests to the SBA, were in furtherance of the scheme to defraud, and they are not time-barred.

Again, the Government's position is well-taken. The statute of limitations begins running from the date of the charged call or mailing in furtherance of the scheme, and the repeated misrepresentations in the requests to the SBA to pay on the guarantees after the loans defaulted were made in furtherance of the Defendants' alleged scheme. Therefore, the later-repeated misrepresentations support Counts 3 through 5 of the Indictment and fall within the ten-year limitations period.

The Defendants make a similar argument concerning Counts 9, 10, and 12, asserting that the Defendants did not make or aid and abet in making false statements within the ten-year statute

of limitations. The Government responds that the false statements in Counts 9 and 12 were first made during the guarantee application process outside the limitations period, but they were made again when the documents were resubmitted as part of the guarantee purchase process, which was within the limitations period. As to Count 10, the Government points out that the statement was not previously made; it was made for the first time when the purchase request was submitted to the SBA, which was within the limitations period. The Defendants aided and abetted in making these statements either originally or as republished within the ten-year period. The Court agrees with the Government's position as to Counts 9, 10, and 12, and those counts **may proceed** as alleged in the Indictment.

## D.     Sufficiency of Allegations as to Counts 7, 8, 11, and 13

The Defendants argue that the factual allegations concerning Counts 7, 8, 11, and 13 fall short of supporting a false statement being made, aided and abetted, or directed by any of the Defendants. Rather, they assert, the false statements were made and submitted by other individuals. Because the Indictment does not allege that the Defendants transmitted the false statements or aided and abetted in transmitting false statements, the Defendants argue the counts must be dismissed.

In response, the Government explains there is no requirement that an indictment specify how a defendant is alleged to have aided and abetted a principal, and the Government does not even need to allege aiding and abetting at all in an indictment to convict a defendant under that theory at trial. *United States v. Newman*, 755 F.3d 543, 545 (7th Cir. 2014) ("an indictment need not charge the [aiding and abetting] offense separately"); *United States v. Gooch*, 120 F.3d 78, 81 (7th Cir. 1997) ("It is unnecessary that the indictment specifically charge aiding and abetting."). The Government also points out that an indictment does not need to allege whom the defendant is

alleged to have aided and abetted.  *See United States v. Somers*, 950 F.2d 1279, 1283 (7th Cir. 1991) ("Allegations as to the identity of the principal whom [defendant] assisted were simply not required . . . .").

Federal Rule of Criminal Procedure 7(c)(1) requires that an indictment have "a plain, concise, and definite written statement of the essential facts constituting the offense charged," not an exhaustive, detailed list of all the evidence that will be admitted at trial.  Here, the Indictment provides more than just the required plain, concise, and definite statement of the essential facts. The Indictment specifically alleges aiding and abetting liability at paragraph 112, identifies the Banc-Serv employee or co-conspirator who made the relevant submissions to the SBA, and provides detailed allegations as to each Defendant's role in the scheme and how they interacted with each loan in connection with which the false statements were made.

When viewed in its entirety, the Indictment contains sufficient factual allegations to support Counts 7, 8, 11, and 13 on the basis of aiding and abetting liability. It provides allegations concerning the false statements, who made the statements, the relationships among the Defendants and other actors, and how the Defendants aided and abetted in the scheme and in making the false statements.

**E.      Sufficiency of Allegations as to Counts 5 and 13 against Defendants Nicole Smith and Kelly Isley**

Defendants Nicole Smith and Kelly Isley further assert that Counts 5 and 13 should be dismissed as to them because the Indictment does not allege any facts that they were involved in any way with the loan to Borrower #7.  Their names are not mentioned at all in the paragraphs that describe the loan to Borrower #7, and Counts 5 and 13 are based entirely on that loan.

In response, the Government notes that,

> Defendant Isley, as the chief operating officer of Banc-Serv Partners LLP ("Banc-Serv") helped to direct and execute the fraud scheme. Id. at ¶¶ 3, 33, 35, 36, 38-43, 45, 47, 48, 50-54, 74-76, 78, 79, 82, 91, 93, 99, 112. Defendant Smith, as a relationship manager at Banc-Serv, also helped execute the fraud scheme. Id. at ¶¶ 4, 36-38, 40-46, 48-56, 57-64, 74-81, 92.

([Filing No. 94 at 3](#).) The Government then concedes, "To be sure, the portion of the Indictment providing more detailed allegations on the loan to borrower #7 is silent about the roles of Defendants Isley and Smith, *see* Dkt. 1 ¶¶ 83-89." *Id.* at 5. However, the Government argues, "Aiding and abetting liability and *Pinkerton* liability—under which defendants are held responsible for foreseeable acts taken in furtherance of the conspiracy by their co-conspirators— are always alternate theories under which a defendant may be convicted of a charged offense at trial, and neither must be alleged in the indictment." *Id.* Thus, the Defendants are sufficiently on notice by the allegations in the Indictment that aiding and abetting liability and *Pinkerton* liability will be pursued against them.

The Court is not persuaded by the Government's position as to Counts 5 and 13 against Defendants Nicole Smith and Kelly Isley. Counts 5 and 13 are based solely on the loan to Borrower #7, which is described at paragraphs 83–89 of the Indictment. The Government acknowledges that these paragraphs do not mention Defendants Kelly Isley or Nicole Smith. Counts 5 and 13 are based on a false statement made on April 1, 2014, in connection with the loan to Borrower #7, and the April 1, 2014 false statement was transmitted by Paul Kibiger, prepared by Defendant Kerri Agee, and signed by Kelly Ayers ([Filing No. 1 at 24](#)). The factual allegations of the Indictment explain the last acts attributable to Defendants Nicole Smith and Kelly Isley as occurring on January 24, 2013, and March 7, 2013. *Id.* at 21–22. This is more than one year before the false statement was made that supports Counts 5 and 13.

The Court concludes that Counts 5 and 13 must be **dismissed** as to Defendants Nicole Smith and Kelly Isley as there are no allegations in the Indictment connecting them to wire fraud activity or false statements concerning Borrower #7, and the more than one-year gap between their last act and the making of the false statement by others does not fairly give them notice of potential aiding and abetting liability or *Pinkerton* liability.

### III.    CONCLUSION

For the reasons explained above, the Court **GRANTS in part and DENIES in part** the Defendants' Motions to Dismiss the Indictment (Filing No. 78; Filing No. 81; Filing No. 87; Filing No. 92). Counts 5 and 13 are **dismissed** as to Defendants Nicole Smith and Kelly Isley. Additionally, Counts 7 and 8 are **merged** and Counts 9 and 10 are **merged**.  In all other respects, the Motions to Dismiss are **DENIED**.

The Government is directed to prepare and file an Amended Indictment by no later **December 2, 2019**, which reflects dismissal and merger of the Counts as determined in this Entry.

**SO ORDERED.**

Date:  11/21/2019

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

James J. Bell
PAGANELLI LAW GROUP LLC
james@paganelligroup.com

Jonathan A. Bont
PAGANELLI LAW GROUP
jon@paganelligroup.com

James H. Voyles
VOYLES VAIANA LUKEMEYER BALDWIN & WEBB
jvoyles@voyleslegal.com

Jennifer Lukemeyer
VOYLES VAIANA LUKEMEYER BALDWIN & WEBB
jlukemeyer@voyleslegal.com

James A. Edgar
J. EDGAR LAW OFFICES, PC.
jedgarlawyer@gmail.com

Mario Garcia
BRATTAIN MINNIX GARCIA
mario@bmgindy.com

Terry Wayne Tolliver
BRATTAIN MINNIX GARCIA
Terry@BMGIndy.com

Michael J. Donahoe
INDIANA FEDERAL COMMUNITY DEFENDERS
mike.donahoe@fd.org

William E. Johnston
U.S. DEPARTMENT OF JUSTICE
william.johnston4@usdoj.gov

Vasanth Raman Sridharan
U.S. DEPARTMENT OF JUSTICE
vasanth.sridharan@usdoj.gov