**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:19-cr-00103-TWP-DLP |
| | ) | |
| KERRI AGEE, | ) | -01 |
| KELLY ISLEY, | ) | -02 |
| NICOLE SMITH-KELSO, | ) | -03 |
| CHAD GRIFFIN, and | ) | -04 |
| MATTHEW SMITH, | ) | -05 |
| | ) | |
| Defendants. | ) | |

**ENTRY ON DEFENDANTS' MOTIONS FOR JUDGMENT OF ACQUITTAL**

This matter is before the Court on Motions for Judgment of Acquittal filed pursuant to Federal Rule of Criminal Procedure 29 by Defendants Kerri Agee ("Agee"), Kelly Isley ("Isley"), Nicole Smith-Kelso ("Smith-Kelso"), Chad Griffin ("Griffin"), and Matthew Smith ("Smith") (collectively, "Defendants") (Filing No. 245; Filing No. 246). In the Second Amended Indictment, all Defendants were charged with Count 1: Conspiracy To Commit Wire Fraud Affecting A Financial Institution, in violation of 18 U.S.C. § 1349 (Filing No. 189). Agee also was charged with Counts 2, 4, and 5: Wire Fraud Affecting A Financial Institution, and Isley and Smith-Kelso were charged with Counts 2 and 4: Wire Fraud Affecting A Financial Institution. *Id.* Following an eight-day jury trial that began on July 26, 2021, the jury returned a verdict finding Agee, Isley, Smith-Kelso, and Griffin guilty as charged. The jury returned a verdict finding Smith guilty of the lesser-included offense of Conspiracy To Commit Wire Fraud (Filing No. 234). The Defendants timely filed Motions for Judgment of Acquittal, within fourteen days after the guilty verdict. For the following reasons, the Court **denies** the Defendants' Motions.

## I.    LEGAL STANDARD

Federal Rule of Criminal Procedure 29(a) states,

> After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction. The court may on its own consider whether the evidence is insufficient to sustain a conviction.

Rule 29(c) states,

> A defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later. . . . If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal.

When considering a motion for judgment of acquittal,

> [W]e ask whether at the time of the motion there was relevant evidence from which the jury could reasonably find the defendant guilty beyond a reasonable doubt, viewing the evidence in the light most favorable to the Government. We must bear in mind that it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences.

*United States v. Wilson*, 879 F.3d 795, 802 (7th Cir. 2018) (internal citations and punctuation omitted). "[T]he reviewing court must use its experience with people and events in weighing the chances that the evidence correctly points to guilt against the possibility of innocent or ambiguous inference." *Id.* The court "must not rend the fabric of evidence and examine each shred in isolation." *Id.*; *see also United States v. Wojtas*, 2018 U.S. Dist. LEXIS 242961, at *14 (N.D. Ill. June 25, 2018) ("In a circumstantial case like this one, each piece of evidence is not viewed in isolation, and drawing inferences from the collective weight of the evidence is not improper.").

The standard is "demanding for criminal defendants . . . and [the court] will reverse only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *United States v. Maez*, 960 F.3d 949, 966 (7th Cir. 2020) (internal citations and quotation marks omitted). "Appellants raising insufficiency challenges face

a nearly insurmountable hurtle." *United States v. Johnson*, 874 F.3d 990, 998 (7th Cir. 2017) (internal citation and quotation marks omitted). "Reversal under this standard is rare because we defer heavily to the jury's findings and review evidence in the light most favorable to the government." *Id.*

## II. DISCUSSION

After the Government rested its case-in-chief on August 2, 2021, each of the Defendants made a motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(a). After hearing argument from the Defendants and the Government, the Court denied each Defendants' motion, and the case was submitted to the jury for deliberation. On August 4, 2021, after approximately ten hours of deliberation, the jury returned guilty verdicts against all five Defendants. Agee, Isley, Smith-Kelso, and Griffin were convicted of Conspiracy To Commit Wire Fraud Affecting A Financial Institution, and Smith was convicted of the lesser-included offense of Conspiracy To Commit Wire Fraud. Agee additionally was convicted of four counts of Wire Fraud Affecting A Financial Institution, and Isley and Smith-Kelso were each convicted of two counts of Wire Fraud Affecting A Financial Institution. The Defendants now ask the Court to set aside the jury's verdicts and enter an acquittal pursuant to Rule 29(c). The Court will address the two Motions separately.

### A. Motion filed by Agee, Isley, Smith-Kelso, and Griffin

In their Motion, Agee, Isley, Smith-Kelso, and Griffin "respectfully move to renew their motion for judgment of acquittal for the reasons stated on the record and in their previously filed brief. For the reasons stated herein, Defendants, by counsel, respectfully file their Rule 29(c) Motion and request the Court enter an order granting the Motion." (Filing No. 246.)

On the morning of August 2, 2021 (the day that the Government rested its case-in-chief), the Defendants filed a brief in support of their motion for judgment of acquittal that they subsequently orally raised during trial after the Government rested. (Filing No. 224.) The Defendants argued that the evidence was insufficient to support convictions for wire fraud affecting a financial institution and conspiracy to commit wire fraud affecting a financial institution, and, furthermore, the statute criminalizing wire fraud affecting a financial institution is unconstitutionally vague as applied to the Defendants. They specifically argued that the evidence did not establish that a financial institution was affected by a fraudulent scheme or that there was a conspiratorial agreement, and a Small Business Administration ("SBA") loan guarantee was not a sufficient property interest for the wire fraud statute. They also argued that the statute fails to provide explicit standards regarding "affecting a financial institution" to prevent arbitrary and discriminatory enforcement of the statute (*see* Filing No. 224; Filing No. 270 at 161–82). During trial, the Government responded to the Defendants' oral motion, and after hearing and considering the parties' arguments, the Court denied the Defendants' motion for judgment of acquittal for the reasons stated on the record (Filing No. 270 at 169–74, 192).

The Government responds to the renewed Motion by explaining the elements of the crimes charged and reminding the Court of the significant evidence that was presented to support each of the elements of the crimes. As to the elements of the crimes charged, the Government explains,

> The elements of conspiracy, as the jury was instructed, are (1) that the conspiracy charged in the indictment existed, and (2) the defendant knowingly became a member of the conspiracy with an intent to advance the conspiracy. (ECF No. 229-1 at 22); William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit 5.08(B) (2020 ed.) (hereinafter "Seventh Circuit Pattern Instructions").
>
> The elements of wire fraud affecting a financial institution, as the jury was instructed, are that (1) the defendant knowingly devised or participated in the scheme to defraud charged in the indictment; (2) the defendant did so with the intent to defraud; (3) the scheme to defraud involved a materially false or fraudulent

4

>pretense, representation, or promise; (4) for the purpose of carrying out the scheme or attempting to do so, the defendant caused interstate or international wire communications to take place in the manner charged in the particular count; and (5) the scheme affected a financial institution. (ECF No. 229-1 at 24); Seventh Circuit Pattern Instructions at 538; *United States v. Marr*, 760 F.3d 733, 743-44 (7th Cir. 2014); *United States v. Serpico*, 320 F.3d 691, 694 (7th Cir. 2003).

(Filing No. 255 at 6–7.)

Regarding the evidence that was presented at trial to support each of the elements of the crimes, the Government points to and the Court agrees; there was extensive testimony given by thirteen witnesses, including SBA officials, borrowers, financial institution employees, and government investigators. Some of the many exhibits that were admitted during trial, included the parties' stipulation that four of the lenders identified during trial were "financial institutions" within the meaning of the relevant statutes (Filing No. 229-5, Trial Exhibit 236; *see also* Trial Exhibits 5–8, 13, 19, 29–31, 35, 55, 56, 60, 64, 65, 75–79, 81–83, 86, 87, 97, 98, 101, 102, 105–11, 118 at 3, 125, 139, 140, 211, 217, 218, 314, 315).

The Government argues, and the Court agrees, that the evidence of a scheme to defraud the SBA (the object of the conspiracy) was overwhelming. The loan documents presented and discussed during trial contained clear misrepresentations about the use of proceeds or the borrowers' eligibility or identity. These misrepresentations were material to the SBA's decision to issue and pay out on the guarantees. Many of the misrepresentations were made after the SBA already had declined a loan because of certain disqualifying factors. The misrepresentations were aimed at acquiring the money and property of the SBA both in the form of the valuable guarantees as well as payment on those guarantees on the back end. Interstate wire communications from Banc-Serv in Indiana to SBA offices in Virginia and California were a routine part of how the scheme was executed. For most of the loans discussed at trial, a financial institution was put at a risk of loss. The parties stipulated that the banks at issue—Community First Bank of Indiana, First

5

American Bank, North Salem State Bank, and Ridgestone Bank—were all qualifying financial institutions for purposes of the statute criminalizing wire fraud affecting a financial institution. The banks' risk was clear from the testimony of the SBA witnesses and a lender who all said that the bank that made the loan would be the one that could be charged a repair or a complete denial of the guarantee.

The Government further argues that the circumstantial evidence presented at trial demonstrated an intent by the Defendants to defraud the SBA. Many exhibits of the Defendants' communications showed their understanding of the SBA's rules and regulations and how they would circumvent those rules and regulations by changing information on documents to get the SBA's approval. The communications showed the Defendants' understanding that the SBA would not approve certain borrowers, loans, or payments, and they discussed how to work around those limitations to obtain approval. The Government asserts that this same evidence—the Defendants' own communications—established that a conspiracy existed in the first place, that there was an agreement between the Defendants to defraud the SBA. And the exhibits and testimony established each of the elements of the crime of wire fraud affecting a financial institution.

Again, after reviewing the parties' arguments and the evidence, the Government's position is well-taken, and the Defendants have failed to satisfy their Rule 29(c) burden. There has been no showing that the record contains no evidence from which the jury could find guilt beyond a reasonable doubt. The lengthy trial testimony and the numerous exhibits, including the trial exhibits identified above, certainly provided relevant evidence from which the jury could reasonably find each of the Defendants guilty beyond a reasonable doubt of wire fraud affecting a financial institution or conspiracy to commit the same. Setting aside the jury's verdict and entering an acquittal for Agee, Isley, Smith-Kelso, and Griffin is not warranted.

**B.      Motion filed by Smith**

In his Motion, Smith asks the Court to set aside the jury's verdict and enter an acquittal because the evidence was insufficient to support a conviction. Smith points to three transactions—the Rodgers, Larson, and Touchton loans—wherein the Government connected him to the conspiracy charged in the Second Amended Indictment. Smith argues the only evidence tying him to the Rodgers loan was testimony from Brad Crawford ("Crawford"), and that testimony was vague and unreliable because Crawford only testified about a telephone conversation seventeen years earlier during which Agee did most of the talking, and he could not recall anything that Smith may have said.

Exhibit 55 concerning the Larson loan is an email communication on which Smith was only copied. Exhibit 56 concerning the Larson loan was prepared by another individual at Smith's employer. And Exhibits 67, 390, and 391 are various loan documents that contain "Smith's signature" that was forged, thereby precluding any incriminating value. Smith also argues that the contents of two letters at pages 8 and 9 of Exhibit 67 do not provide evidence of fraud.

As to the Touchton loan, Smith argues that Exhibit 122 is an email and memorandum composed by other individuals at Smith's employer, and Smith did not prepare or sign those documents. Exhibit 124 is a series of emails regarding the loan, and Smith was not included on those emails. Exhibit 125 is another series of emails, one of which is authored by Smith, wherein he discusses loan proceeds being used to pay the IRS, and he notes that Agee is copied for her concurrence that the loan structure will be compliant for SBA authorization. Smith argues that his communication did not deceive or influence the SBA. Exhibit 125 showed that Smith could not approve the loan, and he sought verification from Agee and another individual. He contends the

7

evidence showed he was copied on some communications, but he did nothing to further the conspiracy, so a judgment of acquittal is warranted.

To support Smith's conviction for the lesser-included offense of Conspiracy To Commit Wire Fraud, the Government points to numerous exhibits admitted at trial,[1] Crawford's testimony, and the parties' stipulation regarding financial institutions. The Government asserts that Smith's argument that Crawford's testimony was vague and unreliable is improper under Rule 29(c) because it is the exclusive function of the jury to determine witness credibility and resolve evidentiary conflicts. In any event, the Government contends, Crawford testified that he remembered having a telephone conversation with both Smith and Agee, and during that conversation, Agee told Crawford to take actions to appear to satisfy the loan requirements. The evidence shows that Smith participated in a telephone conversation during which Agee (his business partner and spouse) instructed an SBA borrower to lie on a loan application. The jury properly considered this as part of the evidence relating to Smith's involvement in the charged conspiracy.

The Government asserts that Smith's involvement in the conspiracy as it relates to the Touchton loan is shown in Exhibits 125 and 122. Exhibit 125 is an email authored by Smith, suggesting an illegal loan structure by having his employer hide the payment of back taxes in an interim note, which would then be paid off by the SBA loan. Exhibit 122 is a loan write-up that was prepared by Smith's colleague, and the write-up indicates that Smith approved the structure for underwriting. A year later when the Larson loan was in process, Smith was included on emails

---

[1] The Government points to the following trial exhibits as direct or circumstantial evidence of Mr. Smith's involvement in the conspiracy: 12, 13, 55, 56, 57, 59, 60, 64, 65, 67, 70, 118, 122, 123, 124, 125, 126, 139, 140, 206, 235, 303, and 398.

8

from Agee and Griffin wherein they discussed hiding the payment of back taxes under the category of working capital (*see* Exhibits 55 and 56). The Government asserts,

> When the deal encountered a hiccup, Agee emailed M. Smith and Griffin and explicitly said that M. Smith has signed off on moving forward with the illegal application. (Ex. 57). Given that BBB funded the Larson loan after this email, a juror could reasonably infer that M. Smith, as the only representative of BBB on the email, approved of the loan's structure.

([Filing No. 255 at 15](.).)

The Government asserts that Smith's argument that he was simply a bystander copied on some communications was a fair argument for him to make, but the jury was free to reject that argument considering all the other evidence that was presented. That some of Smith's signatures were signed or copied by Agee, his then-wife, does not make it unreasonable for a jury to conclude that he still helped with the illegal structures of the loans and thereby joined the conspiracy.

The Government also argues that the jury did not have to consider each piece of evidence in isolation but rather could consider all the evidence in context and cumulatively. "When viewed as a whole, as a pattern of conduct starting in 2004 with the Rodgers Finishing Tools loan and continuing over many years through the Larson loan, a reasonable juror could conclude that M. Smith was a knowing and willful participant in this conspiracy to defraud the SBA." *Id.* at 17.

The Government further notes,

> The jury's finding on the lesser-included charge further demonstrates that the jury carefully parsed through the evidence pertaining to M. Smith alone and did not conflate his conduct with that of the other defendants. The lender M. Smith worked for at the time of the Larson, Touchton, and Advance Pharmaceutical loans—BBB—was not a financial institution, a fact the parties stipulated to. (ECF No. 229-5). The non-BBB loans discussed above all involved financial institutions, and the jury was able to distinguish between the two types.

*Id.* at 16.

As with the other Defendants' Motion, after reviewing the evidence and the arguments presented by the Government and Smith, the Court concludes that the Government's position is well-taken, and Smith has failed to satisfy his Rule 29(c) burden. When viewed alone in isolation and without the context of the other exhibits and testimony, the individual exhibits to which Smith points might not be sufficient on their own to support a conviction. However, the jury (and the Court on this Motion) does not examine each shred of evidence in isolation. The jury was so instructed, including as follows:

> Part of your job is to decide how believable each witness was, and how much weight to give each witness's testimony. You may accept all of what a witness says, or part of it, or none of it". ([Filing No. 229-1 at 11](#)).
>
> In deciding whether a Defendant acted knowingly, you may consider all of the evidence, including what the Defendant did or said. *Id*. at 19.
>
> A defendant's knowledge that a crime is being committed is not sufficient by itself to establish the Defendant's guilt. If a defendant performed acts that advanced the crime but had no knowledge that the crime was being committed or was about to be committed, those acts are not sufficient by themselves to establish the defendant's guilt. A defendant's association with persons involved in a criminal scheme is not sufficient by itself to prove participation in the crime or membership in the criminal scheme. *Id*. at 33.

Moreover, in a Rule 29 motion, the evidence is viewed in the light most favorable to the Government and importantly, it is the exclusive function of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences.

The record is not devoid of any evidence from which the jury could find guilt beyond a reasonable doubt as to Smith. The trial testimony and the exhibits identified by the Government provided relevant evidence from which the jury could reasonably find Smith guilty beyond a reasonable doubt of conspiracy to commit wire fraud. Setting aside the jury's verdict and entering an acquittal for Smith is not warranted.

### III. CONCLUSION

This Court may only reverse a jury verdict if "viewing the evidence in the light most favorable to the prosecution, the record contains no evidence on which a rational jury could have returned a guilty verdict." *United States v. Murphy,* 406 F.3d 857, 861 (7th Cir. 2005). For the reasons previously stated on the record, the Court concludes that sufficient direct and circumstantial evidence was presented at trial for a rational jury to have returned verdicts of guilty. For the foregoing reasons, the Court **DENIES** the Defendants' Motions for Judgment of Acquittal (Filing No. 245; Filing No. 246).

**SO ORDERED.**

Date: 12/1/2021

*[signature]*

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Jonathan A. Bont
PAGANELLI LAW GROUP
jon@paganelligroup.com

Michael J. Donahoe
INDIANA FEDERAL COMMUNITY DEFENDERS
mike.donahoe@fd.org

James A. Edgar
J. EDGAR LAW OFFICES, PC
jedgarlawyer@gmail.com

Jennifer Lukemeyer
VOYLES VAIANA LUKEMEYER BALDWIN & WEBB
jlukemeyer@voyleslegal.com

Julie L. Treida
TREIDA LAW
treidalaw@gmail.com

James H. Voyles
VOYLES VAIANA LUKEMEYER BALDWIN & WEBB
jvoyles@voyleslegal.com

Vasanth Raman Sridharan
US DEPARTMENT OF JUSTICE
vasanth.sridharan@usdoj.gov

William E. Johnston
US DEPARTMENT OF JUSTICE
william.johnston4@usdoj.gov